**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sunita Patel; The Center for Constitutional Rights,<br><br>        Plaintiffs,<br><br>vs.<br><br>Maricopa County, et al.,<br><br>        Defendants. | No. CV 11-01489-PHX-NVW<br><br>**ORDER** |

Before the Court is the County Defendants' Motion for Summary Judgment (Probable Cause; Qualified Immunity), joined by Defendants Hendershott, and County Defendants' Motion to Supplement Their Undisputed Statement of Material Facts. (Doc. 92, 105, 111.) The Motion to Supplement will be denied because the proffered facts are not material although related to Plaintiff's response to the Motion for Summary Judgment.

**I.    Legal Standard for Summary Judgment**

Summary judgment should be granted if the evidence shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court presumes that the nonmoving party's

evidence is true and draws all inferences from the evidence in favor of the nonmoving party. *Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285, 1289 (9th Cir. 1987).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party has met its initial burden with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. Where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**II.     Undisputed Facts**

The material facts are not disputed. On July 29, 2010, a protest against a recently enacted Arizona statute concerning illegal immigrants was held on the north side of the Maricopa County Fourth Avenue Jail in Phoenix, Arizona. During the protest, Maricopa County Sheriff's Office deputies arrested a number of people, including Plaintiff. Numerous videotape recordings were made of these events; seven have been submitted by the parties without objection. Plaintiff came to the protest to act as a legal observer, taking photographs and recording the names of protestors who were arrested.

Initially, six protestors formed a "daisy chain" by connecting themselves to each other through plastic pipes and chaining themselves to a concrete bollard on each side of the jail's sally port. Several other protestors sat in front of the "daisy chain" with linked arms to form a "human chain" across the sally port. Hundreds of other people were standing in the driveway to the sally port (hereafter, "the driveway"), on nearby sidewalks, and in the street that intersects with the driveway. Many of the protestors chanted loudly, some used bullhorns, and some used drums.

1  Using a bullhorn, one of the deputies read an order to the crowd, which declared
2  the protest to be an unlawful assembly and commanded them "in the name of the people
3  of the State of Arizona, to disperse immediately." Some protestors chanted, "We will not
4  comply." When some of the protestors disobeyed the dispersal orders, deputies removed
5  the chains from the bollards and arrested the "daisy chain" and "human chain" protestors.
6  Subsequently, a team of deputies walked in a "U" formation with riot shields north into
7  the driveway, causing people to back away. As the team was standing in the "U"
8  formation, Plaintiff entered into the middle of the driveway, stood directly in front of the
9  formation for a few moments, and then walked to the east side of the driveway. The team
10 then walked backward into the sally port, and the sally port door closed. One deputy told
11 the crowd they had fifteen more minutes to disperse.

12 About fifteen minutes later, the deputies came back outside of the jail, and one of
13 them used a bullhorn to tell people to clear the driveway or be immediately arrested.
14 Plaintiff walked across the driveway a few feet behind the deputy as he was shouting
15 orders via the bullhorn and walked toward the sidewalk on the east side of the driveway.
16 Then she stood in the concrete gutter next to the sidewalk at the east edge of the sally port
17 driveway with one foot partially located on the asphalt. Promptly after the warning,
18 Deputy Gary McGuire arrested three people standing in the driveway, who were holding
19 a large banner across the driveway in front of the sally port. As he brought each of the
20 three arrestees individually to another deputy at the sally port, he passed directly in front
21 of Plaintiff who was standing in the concrete gutter close to the sally port. Immediately
22 thereafter, Deputy McGuire arrested Plaintiff. When she was arrested, she was standing
23 in the concrete gutter.

24 Plaintiff was arrested for violation of A.R.S. § 13-2906 (obstructing a public
25 thoroughfare) and A.R.S. § 28-622 (failure to comply with a police officer). On June 9,
26 2011, the charges against Plaintiff were dismissed.

27
28

## III. Analysis

### A. Probable Cause

Although Plaintiff bears the ultimate burden of proof on the issue of unlawful arrest, Defendants bear the burden of producing evidence that the arresting officers had probable cause for a warrantless arrest. *Dubner v. Cty. & Cnty. of San Francisco*, 266 F.3d 959, 965 (9th Cir. 2001). "Probable cause exists when, under the totality of the circumstances known to the arresting officers (or within the knowledge of the other officers at the scene), a prudent person would believe the suspect had committed a crime." *Id.* at 966. Thus, the subjective beliefs of Plaintiff and the arresting officer are not relevant to the probable cause inquiry. Moreover, "probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). The evidence must be viewed as it would be by a trained law enforcement officer, "not in terms of library analysis by scholars." *Id.* The only question here is whether, under the totality of the circumstances known to Deputy McGuire at the time he arrested Plaintiff, a prudent person would believe that Plaintiff had committed a crime.

A.R.S. § 28-622(A) provides: "A person shall not wilfully fail or refuse to comply with any lawful order or direction of a police officer invested by law with authority to direct, control or regulate traffic." At the time of Plaintiff's arrest, Deputy McGuire knew that orders had been given to disperse immediately and to clear the driveway. Plaintiff does not dispute that the deputies were "invested by law with authority to direct, control or regulate traffic." Some protestors chose to remain in the driveway and to be arrested. Plaintiff briefly stood in the driveway after some of the dispersal orders, walked through the driveway during a dispersal order, and stood in the concrete gutter immediately after a dispersal order. While standing in the concrete gutter, one of her feet was partially located on the asphalt portion of the driveway. Under the totality of the circumstances, a

1  prudent person would have believed that Plaintiff committed a crime under A.R.S.
2  § 28-622(A) by wilfully failing to comply with an officer's order or direction.
3        A.R.S. § 13-2906(A) provides: "A person commits obstructing a highway or other
4  public thoroughfare if, having no legal privilege to do so, such person, alone or with other
5  persons, recklessly interferes with the passage of any highway or public thoroughfare by
6  creating an unreasonable inconvenience or hazard." Although "public thoroughfare" is
7  not defined by statute, "street" or "highway" means "the entire width between the
8  boundary lines of every way if a part of the way is open to the use of the public for
9  purposes of vehicular travel." A.R.S. § 28-101(52). In 2010, the City of Phoenix owned
10 the property on which the driveway was located, which was designed in the official plat
11 as public right-of-way. Thus, it is not unreasonable to consider the entire width of the
12 driveway a "highway or public thoroughfare" under § 13-2906(A).
13       Plaintiff contends that no reasonable officer could have considered her "standing
14 in the concrete gutter on the edge of the sally port driveway roughly a foot away from the
15 sidewalk" as "recklessly interfering" with passage on the driveway or creating an
16 "unreasonable inconvenience or hazard." The parties agree that in this context
17 "recklessly" means "consciously disregards a substantial and unjustifiable risk that the
18 result will occur or that the circumstance exists" and the disregard must constitute a
19 "gross deviation from the standard of conduct that a reasonable person would observe in
20 the situation." *See* A.R.S. § 13-105(10)(c). A prudent person reasonably could conclude
21 that a person standing a foot away from the sidewalk into the street (even if on concrete
22 instead of asphalt) presents at least an inconvenience, and likely a safety hazard, to
23 vehicular passage. Plaintiff contends that her conduct cannot be a gross deviation from a
24 reasonable standard of conduct because it was identical to the behavior of many others
25 who were not arrested. The fact that other people also disregarded the inconvenience and
26 safety hazard their actions created and were not arrested does not make it unreasonable to
27 believe that Plaintiff's conduct was reckless. Under the totality of the circumstances, a
28

1  prudent person would have believed that Plaintiff committed a crime under A.R.S. § 13-2906(A).

2  **B.     Qualified Immunity**

3  Alternatively, Defendants contend that the individual Defendants were protected
4  by qualified immunity. "Qualified immunity shields federal and state officials from
5  money damages unless a plaintiff pleads facts showing (1) that the official violated a
6  statutory or constitutional right, and (2) that the right was 'clearly established' at the time
7  of the challenged conduct." *Ashcroft v. al-Kidd*, __ U.S. __, 131 S. Ct. 2074, 2080
8  (2011). Courts have discretion to decide which of the two prongs of the qualified
9  immunity analysis should be addressed first and may grant qualified immunity on the
10 basis of the second prong alone without deciding the first prong. *Pearson v. Callahan*,
11 555 U.S. 223, 236 (2009); *James v. Rowlands*, 606 F.3d 646, 651 (9th Cir. 2010).

12 "A Government official's conduct violates clearly established law when, at the
13 time of the challenged conduct, the contours of a right are sufficiently clear that every
14 reasonable official would have understood that what he is doing violates that right."
15 *Ashcroft v. al-Kidd*, 131 S. Ct. at 2083 (internal quotation and alteration marks omitted).
16 For a right to be "clearly established," there need not be a case directly on point, but
17 "existing precedent must have placed the statutory or constitutional question beyond
18 debate." *Id.* "The principles of qualified immunity shield an officer from personal
19 liability when an officer reasonably believes that his or her conduct complies with the
20 law." *Pearson*, 555 U.S. at 244.

21 Even if probable cause for Plaintiff's arrest could not be decided as a matter of
22 law, any possible constitutional right that Plaintiff had to stand in the concrete gutter of
23 the driveway after orders for immediate dispersal were given was not clearly established.
24 Based on the undisputed evidence here, including the testimony of the arresting deputy
25 and his supervisor, the arresting deputy reasonably believed that Plaintiff had committed
26 a crime and that her arrest was lawful. Therefore, Plaintiff's claims against the individual
27 Defendants are barred by qualified immunity.

28

IT IS THEREFORE ORDERED that County Defendants' Motion to Supplement Their Undisputed Statement of Material Facts (Doc. 111) is denied.

IT IS FURTHER ORDERED that the County Defendants' Motion for Summary Judgment (Probable Cause; Qualified Immunity) (Doc. 92), joined by Defendants Hendershott (Doc. 105), is granted.

IT IS FURTHER ORDERED that the Clerk enter judgment in favor of Defendants and against Plaintiff and that Plaintiff takes nothing. The Clerk shall terminate this case.

DATED this 21st day of June, 2012.

_____
Neil V. Wake
United States District Judge